983 F.2d 1073
 142 L.R.R.M. (BNA) 2440
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
BELL GLASS COMPANY, A-Diamond Glass Company and A-Diamond
Board-Up Company, doing business as A-Diamond
Glass and Board-Up Company, Respondents.
 No. 89-2456.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 14, 1992.*
Decided Dec. 16, 1992.
 
 Before BAUER, Chief Judge, CUMMINGS, Circuit Judge, and PELL, Senior Circuit Judge.
 
 ORDER
 
 1
 The National Labor Relations Board ("NLRB" or "Board") seeks enforcement of its order against the respondents. Respondents oppose enforcement of the order, claiming that the Board erred when it found them to be successors of Apple. For the reasons that follow, we grant the application for enforcement.
 
 BACKGROUND
 
 2
 Apple Glass Company ("Apple") began operations in 1983. Apple engaged in the business of installing and replacing window glass and storefronts. Ed Kuzniar and George Pistas each owned 50% of the corporate stock. Frank Dorgan, one of Apple's employees, and a union attempting to organize Apple's employees ("Union")[1] filed charges with the NLRB claiming that Apple had engaged in unfair labor practices. Specifically, Dorgan claimed that Apple discriminatorily fired him in violation of the National Labor Relations Act, 29 U.S.C. § 151 et seq. The Union alleged that Apple unlawfully failed and refused to recognize and bargain with the Union as representative of Apple's employees. On April 8, 1986, an ALJ found against Apple. General Counsel Exhibit ("GCX") 13(c). Apple filed no objections to the ALJ's Decision, and the NLRB issued an order adopting the ALJ's Decision on June 18, 1986. GCX 12(b). On appeal, this court enforced the Board's order on August 25, 1986. GCX 12(a). By this time, however, Apple was no more. Apple ceased operations in December of 1985, and dissolved soon thereafter.
 
 
 3
 In early January of 1986, Kuzniar opened a new glass-replacement business, Bell Glass Company ("Bell"). Bell employed some former Apple workers, and it operated out of the former Apple location.
 
 
 4
 On March 1, 1985, prior to Apple's shutdown, A-Diamond Glass and Board-Up Company ("Diamond")[2] was begun by Shirley White and Lenard Settipani, both employed by Apple at the time. After Apple dissolved, Pistas joined Diamond as general partner and contributed greatly to Diamond's business success.
 
 
 5
 In May 1986, the Union filed another charge with the NLRB, this time against Bell and Diamond. The Union sent a notice by certified mail to Pistas at Diamond that the Union expected Diamond to comply with the Board's order and this court's enforcement order. GCX 16. The notice was refused. GCX 17. After two years of litigation, the ALJ concluded that both Diamond and Bell were successors of Apple and that (1) they were jointly and severally obligated to remedy Apple's unlawful discharge of Dorgan, and (2) Diamond was obligated to recognize and bargain collectively with the Union as the exclusive representative of its employees. Decision at 15-16. Diamond filed objections to the ALJ's Decision, though Bell did not. The Board again adopted the ALJ's Decision and now seeks enforcement of its order.
 
 ANALYSIS
 
 6
 Because Bell failed to file objections to the ALJ's Decision, the NLRB's application for enforcement of its order must be granted insofar as it applies to Bell. NLRB v. Bell Co., 561 F.2d 1264, 1266 n. 2 (7th Cir.1977) (involving an unrelated firm with the same name).
 
 
 7
 Diamond filed objections to the ALJ's Decision, thus preserving its right to appeal. Diamond contests the finding in the Board's order that it is a successor to Apple and thus obligated to remedy the unfair labor practices identified by the ALJ. The Board's finding that Diamond is a successor of Apple is a factual finding that is conclusive "if supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e); NLRB v. So-White Freight Lines, 969 F.2d 401, 405 (7th Cir.1992). "Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion." Randall Division of Textron, Inc. v. NLRB, 965 F.2d 141, 144 (7th Cir.1992) (omitting internal quotations).
 
 
 8
 One employer is a successor to another (for the purposes of remedying unfair labor practices) where there is "substantial continuity" between the two enterprises. Fall River Dyeing & Finishing Corp v. NLRB, 482 U.S. 27, 43 (1987). In other words, the focus is on "whether the new company has 'acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations.' " Id. (quoting Golden State Bottling Co. v. NLRB, 414 U.S. 168, 184 (1973)). The Supreme Court has identified several factors that go into this determination: (1) whether the business of both employers is essentially the same, (2) whether the employees of the new company are doing the same jobs in the same working conditions under the same supervisors, and (3) whether the new entity has the same production process, produces the same products, and basically has the same body of customers. Fall River, 482 U.S. at 184.
 
 
 9
 As for the first factor, Apple and Diamond were clearly engaged in essentially the same business: installing glass windows. Tr. 192, 214-15, 292. It is true that Diamond also performed board-up work, but Apple had done so up until a year before it closed. Tr. 214, 301, 487.
 
 
 10
 The evidence pertaining to the second factor also supports the Board's finding of successorship. Diamond's supervisory personnel included Pistas, Lou Stephens, White, and Settipani. Tr. 230-31. All were former Apple employees. Tr. 127, 189, 194-95, 442. Of these four, Stephens and Pistas had been supervisors at Apple. Tr. 125, 188-89. In addition, the employees' work at Diamond, which consisted largely of cutting and installing glass windows, was basically the same as it was at Apple. Tr. 126-29, 234. They used the same types of tools and the same types of trucks. Tr. 529.
 
 
 11
 The final factor mentioned in Fall River is whether the new entity has the same production process, produces the same products, and basically has the same body of customers. This factor too supports the Board's finding. As noted above, the employees at Apple and Diamond used the same types of tools and equipment, Tr. 529, and they did the same type of work, Tr. 126-29, 234. Apple and Diamond had some of the same customers, Tr. 295-301, 437-440, and suppliers, Tr. 274-90.
 
 
 12
 There is other evidence that indicates that Diamond was a successor to Apple. For example, Pistas acknowledged that before Apple ceased operations, he may have told Apple employees that he was going join to Diamond (which he ultimately did in the capacity of general manager) and that they could have jobs there. Tr. 306. White also mentioned to Apple's employees that jobs would be available at Diamond. Tr. 608. Finally, there was evidence that Diamond used equipment that Apple had previously used. Tr. 254-57.
 
 
 13
 Based on all the evidence discussed above, we find there is substantial evidence supporting the Board's finding that Diamond was a successor to Apple.
 
 CONCLUSION
 
 14
 For the foregoing reasons, the Board's application for enforcement of its order against both Bell and Diamond is GRANTED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). The respondents filed a statement requesting oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied, and the appeal has been submitted on the briefs and the record
 
 
 [1]
 Glaziers, Architectural Metal & Glass Workers Local Union No. 27, Chicago & Vicinity, International Brotherhood of Painters and Allied Trades, AFL-CIO
 
 
 [2]
 Originally, Diamond was a partnership, but in January of 1986, two separate corporations were formed. However, the ALJ found that these two corporations were operating as a single business entity. ALJ Decision at 3